**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**FRANCIS C. VENTINCINQUE,**

          **Plaintiff,**

**vs.**                                                                                          **Case No.  8:03-cv-1046-T-24MSS**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

_____/

## ORDER

This cause comes on for consideration upon the filing of Plaintiff's Motion for Rehearing (Dkt. 15) and Defendant's Opposition to Plaintiff's Motion for Rehearing (Dkt. 18).  This Court previously affirmed the decision of the Commissioner finding that Plaintiff was not disabled and denying Plaintiff's claim for disability insurance benefits under the Social Security Act (Dkt. 17). Plaintiff seeks reconsideration by the Court on the ground that the decision is inconsistent with controlling Eleventh Circuit case law and the Commissioner's own rules and regulations regarding: (1) the consideration of the opinions of state agency medical consultants and (2) the ALJ's duty to consider Plaintiff's mental impairments when evaluating Plaintiff's ability to perform past relevant work.  For the reasons stated below, Plaintiff's Motion is **GRANTED IN PART**.

        **A.**        **Consideration of Drs. Brown and Dykes' Opinions**

In the ALJ's decision below, the ALJ found that Plaintiff could return to his occupation as a telephone installer as it was performed by Plaintiff and, thus, was not disabled. (T. at 19). There are only two places in the record that describe Plaintiff's work as a telephone installer, Plaintiff's testimony at the hearing and Plaintiff's Disability Report. (T. at 28-52, 80-89). The ALJ clearly cited to Plaintiff's testimony in his opinion but did not specifically cite to Plaintiff's Disability Report. (T. at 16). Plaintiff testified with respect to his past relevant work as follows:

> I was a repairman most of the time I was - - I was giving a handful of things that people needed a repairman. And I went out and I was a troubleshooter, I solved the problems. And, at times, they needed someone to install, so I installed. At times, they needed someone to run the Embassy Suites install. A very large install with a lot of people, and I put in charge of that. (T. at 36).

> I was again a repairman, I was doing the same work Michigan Bell did but for some contractor, U.S. West. I was given four repair calls. I was - - I would show at the same - - show up at the same place I used to work and in ten minutes I would repair the first call then I had to wait for 50 minutes in a telephone closet, a room about 1/10 the size, for an hour until I could do the next call because this is the way they did it. The stress was unbelievable. (T. at 39).

> To me, I've attempted to describe a stressful situation to you. To me, doing ten minutes worth of work and having to wait 50 minutes until you can do another ten minutes worth of work, and doing this every day is stressful. I mean, I mean at one point, I managed 30 people on a job, you know, it was so counter to my personality that I took it out on everyone. I took it out on my wife, took it out on my kids, took it out on everybody. I mean, I - - I would - - by the end of '93, I was about to explode. (T. at 41).

Plaintiff's disability report reflects that Plaintiff used "machines, tools or equipment" in his work as a telephone installer. (T. at 82).

The only record evidence regarding treatment of Plaintiff's claimed chronic obstructive pulmonary disease ("COPD") is Dr. Wilde's treatment notes. The ALJ noted that Dr. Wilde stated that Plaintiff had hypertension and COPD and that Plaintiff complained on October 28, 1997, of

persistent and chronic wheezing. (T. at 16). Dr. Wilde's notes reflect "[g]ood air exchange with occasional inspiratory wheeze noted" on October 23, 1995; "[d]oes complain of persistent and chronic wheezing since he quit smoking several years ago" on October 28, 1997; "[l]ungs clear with good air exchange" on January 21, 1998; and "[h]as noted fairly constant wheezing lately, but no increased shortness of breath, chest pain, pressure, cough, fever, or sputum production . . . [l]ungs-show good air exchange bilaterally with scattered inspiratory and expiratory wheezes . . . COPD, clinically stable. With the fall approaching I have added AEROBID 2 puffs BID to his regiment of COMBIVENT QID" on October 14, 1998. (T. at 135-137). The ALJ referenced Dr. Wilde's treatment notes in his opinion and accepted Dr. Wilde's opinion in discounting the opinion of Dr. Coffey. (T. at 16-17).

Based on a review of these records, Drs. Brown and Dykes, state consultants, opined in a physical residual functional capacity ("RFC") assessment in 2001 that Plaintiff did not have any exertional, postural, manipulative, visual, or communicative limitations, but that Plaintiff should avoid concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc," as well as "hazards" such as "machinery, heights, etc." (Tr. 141-146). Drs. Brown and Dykes did not make findings with respect to Plaintiff's mental limitations. The Court notes the Commissioner's argument that Plaintiff's disability status expired in December 1998. However, the physical RFC assessment clearly references Dr. Wilde's treatment notes prior to December 1998. (T. at 149).

With respect to Drs. Brown and Dykes, Plaintiff originally contended that the ALJ erred in not properly assessing the limitations caused by Plaintiff's COPD and hypertension, as found by Drs. Brown and Dykes, despite the fact that the ALJ did not find Plaintiff's physical limitations to be severe at step two of the sequential analysis. (Dkt. 9 at p. 11-12). The Commissioner responded

that the evidence did not support a finding of any severe physical limitations. (Dkt. 12 at p.6). This Court's Order noted that Drs. Brown and Dykes based their physical RFC assessment of Plaintiff on medical records supplied to them, not on any physical examination of Plaintiff. (Dkt. 13 at p.5). This Court further noted that the ALJ indicated that he "carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments." (Id. at p.5-6).

Plaintiff argues in his Motion for Reconsideration that such a statement is not sufficient to discharge the ALJ's burden and that the ALJ must specifically state his reasons for rejecting a State Agency medical opinion. Plaintiff argues that, in addition to the limitations placed on Plaintiff by Drs. Brown and Dykes, the record also includes a vocational analysis documenting that Plaintiff cannot return to his past relevant work because he is limited to jobs that do not require exposure to heights and hazards. (Dkt. 15 at p.5). Plaintiff, however, mis-characterizes this evidence. The cited document states that "[t]he decisional outcome is not contingent upon capacity for past relevant work. The claim is a denial even if claimant cannot perform past relevant work. See job citation sheet." (T. at 106). This vocational analysis provides jobs that Plaintiff could perform in the national economy if addressed at step five of the sequential evaluation. The document recites that the listed jobs "do not require extensive public contact" or exposure to "heights and hazards." This document reveals that the examiner took into account the limitations placed on Plaintiff by Drs. Brown and Dykes and, nevertheless, opined that jobs did exist in the national economy which Plaintiff would be able to perform. Here, the ALJ found that Plaintiff could return to his past relevant work at step four of the analysis, and, thus, this vocational analysis was inapplicable to the ALJ's decision.

Nevertheless, an ALJ is required to consider the applicant's entire medical condition at step

four of the sequential analysis in determining whether the claimant can return to past relevant work. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); see also Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985)(noting that an ALJ must consider impairments in combination and that the ALJ did not explain why "she obviously discounts" the post-hearing opinion of an examining psychiatrist that the claimant was unemployable in light of her psychological problems and pain combined).[1] The ALJ must consider even impairments that are not severe when assessing an individual's RFC. 20 C.F.R. § 416.945(a)(2). While the Court's previous analysis was not based solely on the ALJ's comment that he carefully considered all of the medical records, as discussed with respect to Dr. Teja below, upon further review the Court modifies its decision with respect to Drs. Brown and Dykes.

Plaintiff is correct that the ALJ failed to address or explain his rejection of Drs. Brown and Dykes' opinion that Plaintiff should stay away from fumes, odors, dusts, gases, poor ventilation and hazards such as machinery. There is no indication in the record that Plaintiff's position as a telephone installer required exposure to fumes, odors, dusts, gases or poor ventilation, and, thus, failure to discuss this limitation is harmless. However, Plaintiff's past relevant work, as described by Plaintiff, did require that he work with machinery. (T. at 82). Accordingly, in light of the ALJ's finding that Plaintiff retained the RFC to return to his past relevant work, the case must be remanded

---

[1] The Court notes that Plaintiff cites to Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) to support his position that the ALJ has to make clear the weight given to each item of evidence. In Cowart, the Court found that the ALJ failed to adequately develop a full and fair record, in part, because the ALJ failed to make clear the weight accorded to the various testimony considered. Id. There, the ALJ simply stated that he carefully considered all of the testimony and exhibits and "has given weight to each as he feels should be properly accorded to it." That case, however, involved the heightened duty of an ALJ to develop the record when the right to counsel was not waived by the *pro se* plaintiff. Id. Here, there is no such heightened duty.

for the ALJ to address the opinion of Drs. Brown and Dykes with respect to the limitations placed on Plaintiff.

  **B. Consideration of Dr. Teja's Opinion**

With respect to Dr. Teja, the Court noted in its original Order that the ALJ adopted Dr. Teja's opinion. Dr. Teja, the state agency psychiatric medical consultant, signed two separate reviews regarding Plaintiff's mental functioning. Exhibit 5F contains the Mental RFC performed on April 5, 2001. (T. at 150-153). Exhibit 6F contains the Psychiatric Review Technique performed on April 5, 2001. (T. at 154-167). The Psychiatric Review Technique states that Plaintiff has the following functional limitations: mild restriction of activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T. at 164). The ALJ specifically referenced Exhibit 6F in his decision. (T. at 16). Subsequently, the ALJ specifically found that Plaintiff retained the following RFC: "he had mild restrictions in daily living, mild difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, and pace." (T. at 18). As no other part of the record makes these specific conclusions, the ALJ clearly adopted the findings of Dr. Teja contained in Exhibit 6F despite the ALJ's failure to reference this document specifically. See McNealy v. Apfel, 2000 WL 1844728, at *4 (S.D. Ala. Nov. 8, 2000) (affirming the decision of the Commissioner even though the ALJ "did not specifically state that he was giving greater weight" to the opinions of an orthopedic surgeon over a neurologist where the weight given was apparent from the decision).

Plaintiff complains, however, that the ALJ did not specifically reference Exhibit 5F, the Mental RFC. Plaintiff argues that this failure is significant in light of the highly skilled nature of Plaintiff's former work as a telephone installer. The Commissioner responds that Plaintiff's

6

disability status expired in 1998. Plaintiff is correct that the Court erroneously referred to the Psychiatric Review Technique as the Mental RFC on pages 5 and 6 of its September 24, 2004, Order. However, this error did not affect the ultimate conclusion of the Court with respect to Dr. Teja. The ALJ did not specifically refer to the Mental RFC in his decision. The content of the Mental RFC, however, simply elaborates on the findings of the Psychiatric Review Technique. The Mental RFC elaborates that, with respect to Plaintiff's moderate deficiencies in the area of concentration, persistence, and pace, Plaintiff has difficulties in the ability to carry out detailed instructions and to maintain attention and concentration for extended periods of time. (T. at 150). Both of these categories are subsumed under the general category of "Sustained Concentration and Persistence." The ALJ specifically found Plaintiff to have moderate limitations in this area.

Plaintiff also argues that the Court made additional factual errors when discussing the opinions of the state agency medical consultants "which may have impacted its ultimate decision in this case." Plaintiff states that Dr. Teja did not conclude that "Plaintiff's functional limitations did not cause more than a minimal limitation in Plaintiff's ability to perform any basic activities." This comment did not refer to the limitations place on Plaintiff as discussed above but referred to the fact that at page 165 of the Transcript on the Psychiatric Review Technique, Dr. Teja checked the box which reads, "[e]vidence does not establish the presence of the "C" criteria," and did not check the box that reads that medically documented history of an affective order lasting for at least 2 years in duration "has caused more than a minimal limitation of ability to do any basic activity . . .." While the Court had already noted the ALJ's finding that Plaintiff did have mild and moderate limitations, as described in the Psychiatric Review Technique, the findings on page 165 reiterate that Plaintiff did not meet the level of severity to establish an organic mental disorder. See Social

7

Security Administration Program Operations Manual System (POMS) § DI 34001.32.

Plaintiff also states that the Court erroneously stated that Drs. Brown and Dykes, rather than Dr. Teja, found that Plaintiff was "capable of performing simple to moderately complex tasks during the period in which he remained insured and that his bipolar disorder was controllable so long as he took Lithium." See Dkt. 17 at p. 5. Plaintiff is correct that this statement was made by Dr. Teja in the Mental RFC. This scrivener's error, however, did not impact the Court's ultimate decision with respect to Dr. Teja in this case.

Finally, the Court need not further address Plaintiff's substantive arguments with respect to the ALJ's findings regarding Plaintiff's past relevant work in light of the Court's decision to remand the case for the ALJ to address the limitations placed on Plaintiff by Drs. Brown and Dykes when assessing Plaintiff's RFC and to then proceed through steps four and five of the sequential analysis.

**C.      Conclusion**

In light of the above discussion, it is **ORDERED** that the Court's Order of September 24, 2004 (Dkt. 17), is **VACATED**, Plaintiff's Motion for Rehearing (Dkt. 15) is **GRANTED IN PART**, and the case is **REMANDED** for proceedings consistent with this opinion.

**DONE AND ORDERED** in Tampa, Florida on this 15th day of March 2006.

MARY S. SCRIVEN
United States Magistrate Judge

Copies to:
Counsel of Record